# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

KENNIE CARNAIL WHITBY,

Defendant-Appellant.

UNPUBLISHED
December 28, 2017

No. 334737
Livingston Circuit Court
LC No. 15-022864-FC

Before: O'CONNELL, P.J., and BECKERING and STEPHENS, JJ.

PER CURIAM.

A jury found defendant, Kennie Carnail Whitby, guilty of one count of first-degree home invasion, MCL 750.110a(2), 13 counts of armed robbery, MCL 750.529, and one count of resisting and obstructing a police officer, MCL 750.81d(1). The trial court sentenced defendant as a fourth habitual offender, MCL 769.13, to concurrent prison terms of 25 to 75 years for the home invasion conviction, 50 to 75 years for each of the armed robbery convictions, and 5 to 15 years for the resisting and obstructing conviction. Defendant appeals his convictions by right. We affirm.

## I. STATEMENT OF PERTINENT FACTS

The charges against defendant arise from the June 5, 2015 robbery of a weekly card game held in the walkout basement of Mary Pezzoni's home. Around 1:00 a.m., three men entered the home uninvited, armed with a bat, a baton, and a gun, and took money, keys, cell phones, and wallets from the players at the card table. One of the robbers held Pezzoni's boyfriend, and then Pezzoni, at gunpoint, demanding to know the location of "all the money." After rifling through various items in the basement, taking $320 from a cashbox in a cabinet, and grabbing bottles of alcohol, the robbers went upstairs, exited the house through the garage, and made their getaway in a Buick belonging to Virginia Hill, defendant's sister and mother of two of the robbers. Pezzoni called 911, and within 12 hours of the incident, law enforcement officials had four people in custody—Toursean Pressley, Tyler Ayers, Terence Ayers, and Jemantae Perkins—all of whom implicated defendant as having "put them up to it."

Michigan State Police (MSP) Lieutenant Joseph Brodeur, at the time a sergeant, made contact with defendant at a downtown Brighton brewery, informed defendant that a parole violation warrant had been issued for his arrest, and escorted him out of the brewery to handcuff him in relative privacy. Once outside and at Brodeur's patrol vehicle, defendant put his hands

behind his back as if awaiting the handcuffs, and then ran. Authorities apprehended and arrested defendant a short while later and took him to the MSP post in Brighton, where Trooper Andrew Hayes conducted a custodial interrogation. The trial court suppressed much of the interrogation when, subsequent to a *Walker*[1] hearing, the court determined that Trooper Hayes had continued to ask defendant questions after defendant had requested a lawyer. Toward the end of the interview, defendant signed a consent form allowing troopers to retrieve electronic data from his cell phone.

At defendant's trial, the jury heard testimony about the robbery from Pezzoni and the victimized card players. The jury also heard Pezzoni testify that defendant had come to her house a few Thursday nights to play poker, that the last time he had played the stakes had reached $20,000, and that he had recently asked if the games were still being played. Neither Pezzoni nor any of the players testified that they saw defendant on the night of the robbery. Various law enforcement officials testified to how they apprehended the Buick and arrested its driver within minutes of the robbery, and to their encounter with defendant and his car in the driveway where they apprehended the Buick. Terence Ayers testified to the roles each of the four perpetrators played in the robbery and to defendant's part in planning and executing the scheme. MSP Detective Sergeant Scott Singleton testified that he physically searched defendant's phone and reviewed phone records from defendant's service provider obtained pursuant to a search warrant. Singleton said he found text messages between defendant and Toursean Pressley, one of defendant's nephews, planning the crime, and text messages between defendant and his sister, Virginia Hill, apologizing after the crime for getting her sons— Toursean and Tyler Ayers—into trouble. The prosecution admitted the text of the messages into evidence, and provided copies of the text to the members of the jury. After closing arguments, the trial court instructed the jury on the law; both attorneys expressed satisfaction with the court's instructions. The jury deliberated just under two hours before returning guilty verdicts on all counts.

II. ANALYSIS

A. SUPPRESSION

Defendant advances several arguments for suppressing his custodial interview and any evidence arising therefrom. He first contends that the trial court should have suppressed the entire interview on the ground that there was no memorialization of Trooper Hayes advising him of his *Miranda* rights. We disagree. Notably, defendant does not assert that Trooper Hayes failed to advise him of his *Miranda* rights or that defendant did not initially waive those rights. Rather, defendant bases his argument for suppression on lack of a videorecording of Trooper Hayes advising him of his rights or of a signed waiver indicating that defendant understood and waived those rights. This Court reviews a trial court's ultimate decision on a motion to suppress de novo. *People v Simmons*, 316 Mich App 322, 325; 894 NW2d 86 (2016). We review any findings of fact made during the suppression hearing for clear error. *People v Mahdi*, 317 Mich App 446, 457; 894 NW2d 732 (2016). "A finding of fact is clearly erroneous if, after a review of

---

[1] *People v Walker*, 374 Mich 331; 132 NW2d 87 (1965).

the entire record, an appellate court is left with a definite and firm conviction that a mistake has been made." *Id*.

MCL 763.8(2) requires law enforcement officials conducting a custodial interrogation of a suspect in a major felony to "make a time-stamped, audiovisual recording of the entire interrogation." However, failure to make or preserve a recording "does not prevent any law enforcement official present during the taking of the statement from testifying in court as to the circumstances and content of the individual's statement if the court determines that the statement is otherwise admissible." MCL 763.9.

Trooper Hayes testified at the suppression hearing that although he thought his custodial interrogation of defendant was being recorded, he was informed that "the very first couple of minutes" of the interview were not recorded; these included Hayes's notifying defendant of his *Miranda* rights. Hayes said he informed defendant of his rights using a card he had received and kept in his pocket since his days in training, and concluded the advisement by asking if defendant understood the rights and if he waived them. Hayes testified that defendant answered both questions affirmatively. Hayes read into the record the statement of *Miranda* rights printed on the card, and the prosecution entered the card into evidence. Defendant did not dispute Hayes's account of the initial minutes of the custodial interview. The trial court found Hayes's testimony concerning the initial few minutes of the interview credible. Based on the record evidence, we cannot say that the trial court clearly erred in declining to suppress the entire interview based on the lack of a videorecording of Hayes informing defendant of his *Miranda* rights.

Next, in his standard 4 brief,[2] defendant asserts that the trial court should have suppressed the information obtained from his cell phone because it was obtained in a coercive environment, he did not understand the process of consent and the true significance of the consent form, and troopers began to search his phone before he ever gave consent. Defendant argues that obtaining the evidence by means of coercion violated his right to be free from unreasonable searches under the Fourth Amendment, US Const, Am IV, his right to be free from compelled self-incrimination under the Fifth Amendment, US Const, Am V, and his right to the assistance of counsel under the Sixth Amendment, US Const, Am VI. Because defendant did not argue below that his consent was coerced, this issue is unpreserved for appellate review. *People v Metamora Water Svc, Inc*, 276 Mich App 376, 382; 741 NW2d 61 (2007) ("For an issue to be preserved for appellate review, it must be raised, addressed, and decided by the lower court."). We review unpreserved constitutional and nonconstitutional error for plain error affecting substantial rights. *People v Shaw*, 315 Mich App 668, 682; 892 NW2d 15 (2016). "To establish that a plain error affected substantial rights, there must be a showing of prejudice, i.e., that the error affected the outcome of the lower-court proceedings." *People v Jones*, 468 Mich 345, 356; 662 NW2d 376 (2003).

---

[2] A "Standard 4" brief refers to the brief a defendant may file *in propria persona* pursuant to Standard 4 of Michigan Supreme Court Administrative Order No. 2004-6, 471 Mich c, cii (2004).

The lawfulness of a search or seizure depends upon its reasonableness. *Virginia v Moore*, 553 US 164, 171; 128 S Ct 1598; 170 L Ed 2d 559 (2008); *People v Orlando*, 305 Mich 686, 690; 9 NW2d 893 (1943); *People v Beuschlein*, 245 Mich App 744, 749; 630 NW2d 921 (2001). "[S]earches or seizures conducted without a warrant are unreasonable per se, subject to several specifically established and well-delineate exceptions." *People v Borchard-Ruhland*, 460 Mich 278, 293-294; 597 NW2d 1 (1999). One such exception is a "search conducted pursuant to consent." *Id*. at 294. "A consent to search permits a search and seizure without a warrant when the consent is unequivocal, specific, and freely and intelligently given." *People v. Galloway,* 259 Mich App 634, 648; 675 NW2d 883 (2003). A trial court assesses the validity of consent under the totality of the circumstances. *Id*. "Consent to search is not voluntary if it is the result of coercion or duress." *People v. Chowdhury,* 285 Mich App 509, 524; 775 NW2d 845 (2009) (quotation marks, citation, and alteration omitted). However, the mere fact that a defendant is in custody, without more, does not necessarily render consent to search involuntary. *People v Klager*, 107 Mich App 812, 817; 310 NW2d 36 (1981).

In the case before us, the trial court assessed the totality of the circumstances using factors from *People v Cipriano*, 431 Mich 315, 334; 429 NW2d 781 (1988). The court found that defendant had experience with law enforcement, that his detention had been long, but was punctuated with breaks, that troopers had not physically abused him or threatened him with abuse, and that Hayes's continued questioning after defendant asked for a lawyer did not amount to coercion or compulsion. *Id*. The trial court concluded that defendant voluntarily consented to a search of his cell phone and, consequently, declined to suppress defendant's phone records.

Our review of the record convinces us that the trial court did not err by finding that defendant's consent to search his cell phone was valid. The unequivocal quality of defendant's consent is reflected in his expression of approval of the completed consent form, "Yeah, that looks okay." *Galloway*, 259 Mich App at 648. The information to be obtained was from a specific phone, which the consent-to-search form identified by brand name, model, and serial number. Defendant asked, and Hayes answered, several questions about the proposed search of his phone, thus allowing defendant to give his consent intelligently. *Id*. Hayes asked if taking all the information out of his phone would be something defendant "would be willing to let [troopers] do" and, when defendant suggested Hayes take a picture of what he wanted, Hayes gave defendant the opportunity to withhold consent by asking, "Is this something you're not willing to do?" Hayes's questions made it clear that defendant had the option to refuse consent, thus indicating that defendant gave his consent freely. *Id*. In light of the foregoing, we conclude that the trial court did not err in finding that defendant validly consented to a search of his cell phone. Accordingly, the search was reasonable under the Fourth Amendment. *Borchard-Ruhland*, 460 Mich at 293-294.

Likewise, there is no violation of defendant's right under the Fifth Amendment to be free from compelled self-incrimination. US Const, Am V. Defendant contends that Trooper Hayes's continuing to question him after he invoked his right to an attorney coerced him into consenting to a search of his cell phone communications. The relevant portions of the custodial interview transcript show that Hayes did not engage in coercive tactics or apply pressure to defendant to obtain his consent to search his cell phone. Asking defendant for consent to search the phone after defendant had invoked his right to an attorney is not a constitutional violation. *People v Marsack,* 231 Mich App 364, 376; 586 NW2d 234 (1998) (holding that a defendants Fifth

Amendment rights were not violated by authorities asking the defendant to sign a consent form after he had asked for an attorney). In and of itself, consent "is not evidence that tends to incriminate [a defendant]." *Marsack*, 231 Mich App at 375. Consent to search may lead to incriminating evidence of a testimonial nature, but unless that consent is compelled, there is no Fifth Amendment violation. As already indicated, defendant's consent to search his cell phone was not compelled; it was "unequivocal, specific, and freely and intelligently given." *Galloway*, 259 Mich App at 648. Accordingly, there is no violation of defendant's right under the Fifth Amendment to be free from compelled self-incrimination. US Const, Am V. Finally, there is no Sixth Amendment violation because formal adversarial proceedings had not begun when Hayes asked defendant to sign the consent form. *Marsack*, 231 Mich App at 376-377 (the Sixth Amendment right to counsel "attaches and represents a critical stage in the proceedings only after adversarial legal proceedings have been initiated against a defendant by way of indictment, information, formal charge, preliminary hearing, or arraignment.").

Defendant also contends in his standard 4 brief that troopers illegally searched his phone prior to obtaining his consent when they went into the phone's "personal settings" to obtain the phone's serial number, brand name, and model. Assuming for the sake of argument that this minimal intrusion into defendant's phone to obtain information necessary to complete the consent-to-search form was constitutionally unreasonable, the exclusionary rule would not apply to suppress the incriminating text messages on defendant's phone between him and Toursean Pressley because the record shows that authorities also discovered the messages through an independent source.

The rationale "for extending the exclusionary rule to evidence that is the fruit of unlawful police conduct has been that this admittedly drastic and socially costly course is needed to deter police from violations of constitutional and statutory protections." *Nix v Williams*, 467 US 431, 442-43; 104 S Ct 2501, 2508; 81 L Ed 2d 377 (1984). "The independent source doctrine allows admission of evidence that has been discovered by means wholly independent of any constitutional violation." *Id*. at 443.

> The independent source doctrine teaches us that the interest of society in deterring unlawful police conduct and the public interest in having juries receive all probative evidence of a crime are properly balanced by putting the police in the same, not a worse, position that they would have been in if no police error or misconduct had occurred. [*Id*.]

In the instant case, Detective Sergeant Singleton testified that he filed preservation requests with each of the suspects' phone carriers so that the carriers would retain text messages, which carriers typically do not keep for a long time. He also testified that when he examined Toursean's phone, he found several calls between Toursean and defendant from June 2, 2015 to June 5, 2015, and text messages between the two after the crime had occurred. The latter text messages were also contained in the content of defendant's Verizon records. Singleton also testified that the source of significant text messages between defendant and Toursean prior to the crime, i.e., the messages compiled into the document given to members of the jury, was the cell phone records, not defendant's cell phone itself. Thus, even if we were to find that defendant did not consent to the search of his phone or that the extraction of identifying information from the phone constituted an illegal search, Singleton discovered the relevant inculpatory texts between

Toursean and defendant from an independent source, i.e., from phone records obtained from the carriers pursuant to an unchallenged search warrant. *Nix*, 467 US at 443.

## B. HEARSAY TESTIMONY

Defendant next contends that the trial court erred in allowing coconspirator Terence Ayers to testify to statements made by Toursean Pressley before presenting evidence establishing the existence of a conspiracy that involved defendant. Although defense counsel challenged Terence's testimony regarding Toursean's statements as hearsay, counsel did not question whether the prosecution had presented evidence preponderating toward the establishment of a conspiracy. Rather, defense counsel said, "as long as we're talking . . .during or in furtherance of the conspiracy, we're fine." Accordingly, this issue is unpreserved. *People v Asevedo*, 217 Mich App 393, 398; 551 NW2d 478 (1996) ("An objection based on one ground at trial is insufficient to preserve an appellate attack based on a different ground."). We review unpreserved issues for plain error affecting defendant's substantial rights. *Shaw*, 315 Mich App at 682. An error affects substantial rights if it affected the outcome of the proceedings, and it either resulted in the conviction of an innocent person or seriously affected the fairness, integrity or public reputation of the proceedings. *People v Jones*, 468 Mich 345, 355-356; 662 NW2d 376 (2003).

Hearsay is a statement other than one made by the declarant while testifying and offered in evidence to prove the truth of the matter asserted. MRE 801(c). Hearsay is inadmissible at trial except as provided by Michigan's rules of evidence. MRE 802. A statement against a party is not hearsay if it is made "by a coconspirator of a party during the course and in furtherance of the conspiracy on independent proof of the conspiracy." MRE 801(d)(2)(E). This Court has explained the requirements for admitting testimony under MRE 801(d)(2)(E) as follows:

> In order to qualify under the exclusion for statements by a coconspirator, the proponent of the statements must establish three things. First, the proponent must establish by a preponderance of the evidence that a conspiracy existed through independent evidence. *People v Vega,* 413 Mich 773, 780; 321 NW2d 675 (1982). A conspiracy exists where two or more persons combine with the intent to accomplish an illegal objective. *People v Blume,* 443 Mich 476, 481-482; 505 NW2d 843 (1993). It is not necessary to offer direct proof of the conspiracy. *People v Justice (After Remand),* 454 Mich 334, 347; 562 NW2d 652 (1997). Instead, it is "sufficient if the circumstances, acts, and conduct of the parties establish an agreement in fact." *People v Atley,* 392 Mich 298, 311; 220 NW2d 465 (1974), overruled on other grounds by *People v Hardiman,* 466 Mich 417, 428; 646 NW2d 158 (2002). Circumstantial evidence and inference may be used to establish the existence of the conspiracy. *People v. Gay,* 149 Mich App 468, 471; 386 NW2d 556 (1986). Second, the proponent must establish that the statement was made during the course of the conspiracy. *People v Bushard,* 444 Mich 384, 394; 508 NW2d 745 (1993). The conspiracy continues "until the common enterprise has been fully completed, abandoned, or terminated." *Id*. Third, the proponent must establish that the statement furthered the conspiracy. *Id.* The requirement that the statement further the conspiracy has been construed broadly. *Id*. at 395, 508 NW2d 745. Although idle chatter will not satisfy this

requirement, statements that prompt the listener, who need not be one of the conspirators, to respond in a way that promotes or facilitates the accomplishment of the illegal objective will suffice. *Id*. [*People v Martin*, 271 Mich App 280, 317; 721 NW2d 815, 840-41 (2006).]

Our review of the record leads us to conclude that, prior to Terence's testimony, the prosecution had established by a preponderance of the evidence defendant's involvement in a conspiracy to rob the poker game at Pezzoni's house. *Martin*, 271 Mich App at 317 (citation omitted). Pezzoni had testified to defendant's prior participation in the games at a time when the stakes reached $20,000 and of his interest in knowing if the games were still being played. The robbers entered the basement at approximately the same time through different entry points, and several victimized poker players testified to the coordinated nature of the home invasion and robbery and the robbers' shared expectation of finding a stash of money. There is no record evidence that the three who committed the robbery had ever been to a poker game at Pezzoni's house, knew where her house was, or were even familiar with the area.

In addition, the prosecution had presented evidence that linked defendant to the Buick used to flee the robbery. Brighton Police Officer Thomas Sliwa testified that he was on the lookout for any vehicles coming his way that might have been involved in the home invasion when he saw a small, gray, four-door vehicle (defendant's car) followed by a tan Buick turn rapidly onto Seventh Street and pull into the same driveway on Pinewood Court. Brighton Police Officer Christopher Parks testified that he made contact with the driver of the small gray car, who said that he was going to work cleaning a brewery in downtown Brighton and had come back to pick up some supplies. Parks asked the driver for identification, and learned that the driver's last name was Whitby. Parks identified the driver as defendant. Trooper Hayes testified that, in addition to items inside the Buick that linked the Buick's occupants to the robbery, he also found a card bearing defendant's name. Lieutenant Brodeur testified that he observed the interviews with all four suspects and that, based on information he learned from those interviews, he was interested in locating defendant.

Moreover, the prosecution had also presented evidence suggesting that defendant had not been truthful about his movements on the night of the robbery. Contrary to defendant's explanation to Officer Parks that he had stopped at the house on Pinewood Court to pick up cleaning supplies, Mary Buckmeier, into whose driveway defendant had turned, testified that defendant had left no cleaning supplies at her house or in her garage. In addition, during his custodial interview, defendant impliedly denied being anywhere near the Pinewood Court address on the night of the robbery by explaining that he dropped toilet paper off at a brewery before going home at around 12:50 a.m., and could not think of anything else that happened after that. Moreover, contrary to defendant's assertion to Officer Parks that he did not know anyone in the Buick, two of the occupants were his nephews, Toursean Pressley and Tyler Ayers.

It is true, as defendant points out, that no one at Pezzoni's poker game identified him as one of the robbers. Nevertheless, the circumstantial evidence of defendant's familiarity with the game, his proximity to the robbery and the Buick used by the robbers to flee the scene, the fact that a card with his name on it was found in the Buick, and contradictions between his explanation to Officer Parks of his presence at Pinewood Court and his account to Trooper Hayes of his movements on the night of the robbery support a reasonable inference that

defendant was involved in the robbery with the other four suspects. Therefore, Terence's testimony to what Toursean said regarding the planning and execution of the robbery was admissible under MRE 801(d)(2)(E) as statements made "by a coconspirator of a party during the course and in furtherance of the conspiracy." Accordingly, the trial court did not plainly err or abuse its discretion by admitting the testimony.

## C. INEFFECTIVE ASSISTANCE OF COUNSEL

### 1. STANDARD OF REVIEW

Defendant raises several claims of ineffective assistance of counsel, none of which he preserved by raising the issue in a motion for a new trial or a motion for a *Ginther* hearing. *People v Hoag*, 460 Mich 1, 6; 594 NW2d 57 (1999), citing *People v Ginther*, 390 Mich 436, 442-443; 212 NW2d 922 (1973). This Court reviews unpreserved claims of ineffective assistance of counsel for "mistakes apparent on the record." *People v Petri*, 279 Mich App 407, 410; 760 NW2d 882 (2008). To show ineffective assistance of counsel, a defendant must establish that "(1) counsel's performance fell below an objective standard of reasonableness and (2) but for counsel's deficient performance, there is a reasonable probability that the outcome would have been different." *People v Trakhtenberg* 493 Mich 38, 51; 826 NW2d 136 (2012). "Failing to advance a meritless argument or raise a futile objection does not constitute ineffective assistance of counsel." *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010).

### 2. INSTRUCTIONAL ERROR

In his main brief, defendant contends that the trial court erred when it failed to instruct the jury that police should have recorded defendant's interrogation for a major felony and that it could consider the absence of a recording of the complete interview in evaluating the evidence related to defendant's statement. Additionally, defendant contends that his trial counsel rendered constitutionally ineffective assistance when he failed to request this instruction.

Pursuant to MCL 763.8(2),

> A law enforcement official interrogating an individual in custodial detention regarding the individual's involvement in the commission of a major felony shall make a time-stamped, audiovisual recording of the entire interrogation. A major felony recording shall include the law enforcement official's notification to the individual of the individual's Miranda rights.[3]

MCL 763.9 provides the remedy for failure to comply with MCL 763.8(2) as follows:

---

[3] An exception to this requirement exists where the person law enforcement officials are interrogating objected to the recording, and his or her objection was properly documented under MCL 763.8(3). This exception does not apply in the instant case. It is undisputed that the MSP Brighton post had the audiovisual equipment that would render MCL 763.8(2) applicable. MCL 763.8(1). MCL 763.8(1).

[T]he jury shall be instructed that it is the law of this state to record statements of an individual in custodial detention who is under interrogation for a major felony and that the jury may consider the absence of a recording in evaluating the evidence relating to the individual's statement.

There is no dispute that Trooper Hayes conducted a custodial interrogation of defendant concerning defendant's involvement in a first-degree home invasion and armed robberies, and that these crimes are major felonies as defined by MCL 763.7(d). MCL 750.110a(5); MCL 750.529. Thus, compliance with MCL 763.8 was mandatory. Although a video recording of part of the interrogation existed, the recording omits the initial portion of Hayes's interview with defendant, including Hayes's notification to defendant of his *Miranda* rights. If we assume without deciding that compliance with MCL 763.9 requires a recording of the complete interrogation, not just part of it, then the video recording did not comply with the statute and instruction according to MCL 763.9 was mandatory.

Defense counsel's clear expression of satisfaction with the jury instructions constituted a waiver that extinguished any instructional error the trial court may have committed by failing to give the instruction. *People v Kowalski*, 489 Mich 488, 503; 803 NW2d 200 (2011). Accordingly, we review only whether defendant's trial counsel erred by not requesting the instruction. To prevail, defendant must show that his counsel's failure to request the MCL 763.9 instruction was deficient under an objective standard of reasonableness and that the deficiency prejudiced defendant. *Trakhtenberg*, 493 Mich at 51. In order to show prejudice, defendant must show that, "but for counsel's deficient performance, there is a reasonable probability that the outcome would have been different." *Id*.

Assuming for the sake of argument that trial counsel's failure to request an instruction mandated by the circumstances constituted deficient performance under an objective standard of reasonableness, defendant has not shown a reasonable probability that the deficiency was outcome determinative. *Id*. The jury was aware of the incompleteness of the recording from the testimony of Lieutenant Brodeur and Trooper Hayes, and defense counsel drew the jury's attention briefly to the problems with the videorecording in his closing. Neither Pezzoni nor any of the poker-player witnesses testified to seeing defendant on the night of the robbery, but they also testified to the coordinated actions of the home invaders and robbers. Law enforcement officials testified to defendant's presence in the area of the Buick on the night of the robbery, and that they retrieved copious evidence from the Buick indicating that its occupants were involved in the robbery. Terence Ayers testified to defendant's involvement in planning and supporting the execution of the robbery and the robbers' getaway, and Detective Sergeant Singleton testified to the text messages on defendant's phone implicating defendant in the crime. Given the testimony and evidence submitted at trial, the jury returned guilty verdicts in under two hours. Defendant's assertion that the outcome would have been different had the trial court read the instruction mandated by MCL 763.9 is simply not sustainable on this record. Therefore, to the extent that trial counsel performed deficiently by failing to request the instruction, defendant has not shown that, but for counsel's deficient performance, there is a reasonable probability that the outcome of the trial would have been different. Accordingly, defendant's claim of ineffective assistance based on trial counsel's failure to request the subject instruction must fail.

## 3. ILLEGAL ARREST

Defendant contends in his standard 4 brief that his arrest was unlawful because Brodeur announced he was taking defendant into custody pursuant to a parole violation warrant, and the record contained no evidence that a parole violation warrant had been issued; the only document in the record was a June 3, 2015 complaint arising out of defendant's alleged operation of a motor vehicle while his license was suspended or revoked, which had not been signed by anyone but the prosecution. Defendant further contends that defense counsel rendered ineffective assistance by failing to challenge defendant's arrest and to request an instruction to the jury that defendant was resisting an illegal arrest.

In response to defendant's arguments on appeal, the prosecution obtained this Court's permission to expand the record and produced a copy of the June 3, 2015 complaint, described above, that had been signed by the complaining witness and the judge as of June 5, 2015, making it an official warrant for defendant's arrest one day before Brodeur arrested him.

MCL 764.15(1)(g) authorizes a peace officer[4] to make a warrantless arrest where the peace officer has reasonable cause to believe that the person "has violated a condition of parole from a prison." " 'Reasonable cause' means having enough information to lead an ordinarily careful person to believe that the defendant committed a crime." *People v Freeman*, 240 Mich App 235, 236; 612 NW2d 824 (2000).

Brodeur testified that he told defendant that there was a warrant for his arrest, and wrote in a supplemental incident report that he "explained to [defendant] that he had a warrant for his arrest for a parole violation." Although there is no evidence in the record of an actual parole violation warrant, there was a warrant for defendant's operating a vehicle while his license was suspended or revoked, and there is record evidence to support a warrantless arrest. Brodeur knew that a crime had occurred and that the perpetrators in custody, two of whom were defendant's nephews, were unanimous in their accusations against defendant and his involvement in the home invasion and armed robbery. He had investigated defendant sufficiently to know that he had his own cleaning business and that one of his clients was the downtown brewery where Brodeur went looking for him, and, evidently, that he was on parole. In light of these facts, when Brodeur actually found defendant at the brewery, he had reasonable cause to believe that defendant had violated a term of his parole from prison by aiding in a robbery. Therefore, to the extent that Brodeur arrested defendant on the belief that he had violated the conditions of his parole from prison, regardless of whether a valid warrant existed, Brodeur's warrantless arrest of defendant was lawful. *People v. Champion,* 452 Mich 92, 115; 549 NW2d 849 (1996); *People v Glenn-Powers*, 296 Mich App 494; 823 NW2d 127 (2012) (holding that a valid arrest warrant was not required to make an arrest pursuant to MCL

---

[4] "The term "peace officer' generally includes sheriffs and their deputies, constables, marshals, members of the police force of cities, and other officers whose duties are to enforce and preserve public peace." 1 Gillespie Michigan Criminal Law & Procedure (2d ed), § 11:1. Members of the Michigan State Police are given all the powers of a deputy sheriff to make arrests. MCL 28.6(5).

764.15(1)(g), and the arresting officer's subjective belief that the warrant was the only basis for the arrest was irrelevant). Because Brodeur's arrest was lawful under the circumstances, defense counsel did not render ineffective assistance by failing to challenge defendant's arrest, or by failing to ask the court to instruct the jury that defendant was resisting an illegal arrest. *People v Riley*, 468 Mich 135, 142; 659 NW2d 611 (2003)(observing that counsel is not required to make a meritless motion or futile objection).

### 4. CHARGES

Defendant also contends in his standard 4 brief that because the resisting and obstructing charge against him was unrelated to the first-degree home invasion and armed robbery charges, his trial counsel rendered ineffective assistance by failing to move for severance and a separate trial on the resisting and obstructing charges. We disagree.

Pursuant to MCR 6.120(A), a "prosecuting attorney may file an information or indictment that charges a single defendant with any two or more offenses. Each offense must be stated in a separate count. Two or more informations or indictments against a single defendant may be consolidated for a single trial." Accordingly, the prosecutor in the instant case originally filed an information charging defendant with first-degree home invasion, multiple counts of armed robbery, and resisting and obstructing a police officer. Nevertheless, "[o]n the defendant's motion, the trial court must sever for separate trials offenses that are not related as defined in subrule (B)(1)." MCR 6.120(C). Subrule (B)(1) provides that, for purposes of MCR 6.120, "offenses are related if they are based on: (a) the same conduct or transaction, or (b) a series of connected acts, or (c) a series of acts constituting parts of a single scheme or plan." MCR 6.120(B)(1).

As previously indicated, Brodeur had reasonable cause to believe that defendant had violated his parole by assisting other perpetrators in a home invasion and armed robbery. Because defendant's parole violation was related to the acts that resulted in the charges against him, his attempt to resist arrest for a parole violation was related to the offenses for which he was charged and were properly joined under MCR 6.120(C). "Ineffective assistance of counsel cannot be predicated on the failure to make a frivolous or meritless motion." *Riley*, 468 Mich at 142. Accordingly, defendant's claim that his trial counsel rendered ineffective assistance when he failed to move for severance of the resisting and obstructing charge from the remaining charges fails.

### D. REMAINING STANDARD 4 ISSUES

### 1. AUTHENTICATION

Defendant contends that the trial court erred when it allowed testimony about cell phone text messages when there was no clean chain of custody relative to the phone. Again, we disagree. The Court reviews a trial court's evidentiary decision for an abuse of discretion. *Shaw*, 315 Mich App at 682. A trial court has not abused its discretion if its decision results in an outcome within the range of reasonable and principled outcomes. *People v Duncan*, 494 Mich 713, 723; 835 NW2d 399 (2013).

The essence of defendant's allegations is that, because of the breaks in the chain of custody, one cannot be certain that he actually wrote the text messages ascribed to him. With regard to chain of custody, the relevant question is whether "an adequate foundation for admission of the evidence has been laid under all the facts and circumstances of each individual case. Once a proper foundation has been established, any deficiencies in the chain of custody go to the weight afforded to the evidence, rather than its admissibility." *People v White*, 208 Mich App 126, 133; 527 NW2d 34 (1994).

One means of establishing a proper foundation is testimony of a witness with knowledge that a matter is what it is claimed to be. MRE 901(b)(1). In the instant case, Trooper Hayes testified at trial that the Motorola Droid erroneously placed in an evidence bag labeled as Tyler Ayers' iPhone was in fact the cell phone defendant identified as his own, used to call his wife, and granted permission to search. In addition, the trial court allowed the jury to watch (with muted volume) the portion of Hayes's custodial interview with defendant where defendant used the phone Hayes brought to him to call his wife. Further, Detective Sergeant Singleton testified that he found nothing—in his comparison of the records obtained from defendant's service provider with the data on the phone itself—indicating that the phone was not defendant's.[5] Singleton further testified that, although the name on the phone records is "Michael Golden," the address is defendant's and no one named "Michael Golden" lived at defendant's address. On this record, the evidence establishes that the Motorola Droid is what proponents say it is, i.e., defendant's phone. Therefore, the trial court did not err in admitting the phone as evidence.

Defendant also questions authentication of the text messages themselves. This question is unpreserved; accordingly, we review it for plain error affecting defendant's substantial rights. *People v Carines*, 460 Mich 750, 762; 597 NW2d 130 (1999). "The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." MRE 901(a). One of the ways a proponent of evidence can satisfy the requirement of authenticity or identification as a condition precedent to admissibility is through "[a]ppearance, contents, substance, internal patterns, or other distinctive characteristics, taken in conjunction with circumstances." MRE 901(b)(4). The prosecution did not address the issue of authentication prior to admitting the content of defendant's text messages with Hill and Toursean, and defendant did not object. On cross-examination, defense counsel asked Singleton, "Are you 100% positive, beyond a shadow of a doubt, that it was Virginia Hill on one side of that phone, not her sister, not somebody pretending to be her, or anybody else?" Singleton answered affirmatively, explaining: "Because he says Virginia I am so sorry about this and refers to her by name and she responds I know bro, which is her brother, everything is going to be all right." Based on this testimony, the content of the text messages between defendant and Hill authenticate the messages as being between defendant and Hill.

---

[5] Singleton testified that the downloads of the suspects' phones that he received from the service providers contained everything that was on the handsets.

With regard to the text messages purported to be between defendant and Toursean, the content of those messages taken in conjunction with the circumstances also support a finding of authenticity. The messages contain information about Pezzoni's house that defendant would know from going there to play poker, such as the fact that she does not check her guests for weapons, she has a big, trained dog, her children and husband will be asleep upstairs, and that she carries the cash.[6] One of the messages states that they can "meet at one of my contracts" for defendant to get his cut. There are also messages that correspond to what defendant himself said he did. He told Hayes during the admitted portion of the custodial interview that when one of his nephews called, asking him for help, he picked them up and took them to a room in a building he cleaned. In a corresponding message, defendant tells Toursean to "Get comfy in back room, nobody will come in there." In the same exchange, Toursean referred to his conversation partner as "Unc," presumably short for "Uncle." As previously indicated, defendant is Toursean's uncle. Again, the content and context of the messages support their authenticity. Accordingly, the trial court did not plainly err by admitting the text messages into evidence.

## 2. PSIR

Finally, defendant contends that the trial court abused its discretion when it allowed the prosecution to add information to his PSIR at the sentencing hearing. We disagree. We review a trial court's response to challenges to the accuracy of information in a PSIR for an abuse of discretion. *People v Uphaus (On Remand)*, 278 Mich App 174, 181; 748 NW2d 899 (2008). A trial court has not abused its discretion if its decision results in an outcome within the range of reasonable and principled outcomes. See *id.*

The information at issue involves defendant's attempted jailbreak less than a week prior to the sentencing hearing. The prosecutor received the information two days prior to the hearing, and defense counsel and the trial court received the information on the day of the hearing. Defense counsel objected in part on the ground that he did not receive the information at least two business days before the hearing, as MCR 6.425(B) requires, and said that defendant "obviously" disagreed with the report of the events. Defendant did not articulate a specific challenge to the accuracy of the information or request an adjournment of the hearing to "review the presentence report and to prepare any necessary corrections, additions, or deletions to present to the court." MCR 6.425(B). Probation agent Kim Dewar told the court during a bench conference with the court and both attorneys that she would have put the information in the report had she known about it before completing the report, and that she was going to add it to the Michigan Department of Corrections (MDOC) case report. She also said she was going to write an addendum and attach it to the PSIR. In fact, the record indicates that someone was waiting at the court to take the PSIR back to Dewar's office and make the necessary corrections. Subsequent to the bench conference, the court ruled that the information could be added to the PSIR.

---

[6] Pezzoni testified about the dog, that her children and ex-husband were asleep upstairs, and that she carried cash during the poker games.

We conclude that the trial court did not abuse its discretion by allowing the addition to defendant's PSIR of information about defendant's attempted jailbreak. On appeal, defendant does not articulate a specific challenge to the accuracy of this information, he merely objects to its effect on his confinement level, contact visits with family and friends, and the types of jobs available to him. Defendant cites no authority for the proposition that the adverse effect of information, the accuracy of which is unchallenged, is grounds for removing the information from the PSIR. Defendant's attempted jailbreak arguably falls within the category of "a complete description of the offense and the circumstances surrounding it," MCR 6.425(A)(1)(b), and thus is the type of information to be included in a PSIR, and Dewar told the court that she intended to provide an account of the information in an addendum to the PSIR. Finally, even if this Court were to decide that the trial court abused its discretion by allowing the information to be included in the PSIR, defendant cites no authority supporting his requested remedy, i.e., a revised PSIR that simply omits the added information about the attempted escape investigation. On this record, we cannot say that the trial court's decision to add to the agent's description of the offense an account of defendant's attempted jailbreak resulted in an outcome outside the range of reasonable and principled outcomes. *Uphaus (On Remand)*, 278 Mich App at 181. Therefore, the trial court did not abuse its discretion by allowing the addition of the information to defendant's PSIR. *Id*.

Affirmed.

/s/ Peter D. O'Connell
/s/ Jane M. Beckering
/s/ Cynthia Diane Stephens

-14-